IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-cv-00432-BO-RN

| | | |
|---|---|---|
| NAOMI LIEBHOLD and MICHAEL PEPETTI, individually, and on behalf of all others similar situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | ORDER |
| INTELERAD MEDICAL SYSTEMS, INCORPORATED, | ) | |
| Defendant. | ) | |

This cause comes before the Court on two motions to dismiss plaintiffs' complaint pursuant to Fed R. Civ. P. 12(b)(1) and 12(b)(6) and defendant's motion to strike pursuant to Fed. R. Civ. P. 12(f). Plaintiffs have responded, defendant has replied, and a hearing on the motions was held before undersigned on June 25, 2026, in Raleigh, North Carolina. In this posture, the motions are ripe for ruling.

## BACKGROUND

Plaintiff Naomi Liebhold commenced this action by filing a putative class action complaint on July 18, 2025, against DICOM Grid, Inc. d/b/a Ambra Health and Intelerad, Inc. d/b/a Intelerad Medical Systems, bringing claims arising from an alleged data breach which compromised highly sensitive protected health and personally identifiable information. [DE 1]. On August 29, 2025, Liebhold filed an amended complaint. [DE 7]. On February 19, 2026, the Court denied without prejudice Liebhold's motion to consolidate this action with a second action pending in this district, *Michael Papetti v. DICOM Grid, Inc., et al.*, No. 5:25-cv-634-BO-RN (E.D.N.C.). [DE 26].

Defendants Ambra Health and Intelerad Medical Systems moved to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim. [DE 28].

On April 10, 2026, without first seeking leave of court or the consent of defendants, Liebhold and Michael Papetti filed a second amended complaint in this case, alleging claims on behalf of themselves and others similarly situated against Intelerad Medical Systems, Inc. ("Intelerad") arising from the same alleged data breach.[1] Liebhold and Papetti assert claims of negligence, negligence per se, invasion of privacy, breach of implied contract, unjust enrichment, breach of fiduciary duty, breach of third-party beneficiary contract, bailment, violation of the Washington Consumer Protection Act, RCW 19.86.010, *et seq.*, and violation of Washington Data Breach Disclosure Law, RCW 19.255.005, *et seq*. *Id.* Defendant Intelerad moved to strike Liebhold and Papetti's second amended complaint [DE 35] and then to dismiss the second amended complaint. [DE 37].

In their second amended complaint, plaintiffs allege that Intelerad runs a cloud-based medical image management platform (the "Platform") called InteleShare, which provides "physicians, patients, and researchers a superior cloud solution for reading, storing, and sharing diagnostic imaging." [DE 34] ¶ 2. Intelerad's Platform is used by healthcare providers nationally to access, transmit, and store patients' sensitive information, including medical images and related data. *Id.* ¶ 3. In operating the Platform, Intelerad relied on third-party software, SimpleHelp Remote Monitoring and Management ("SimpleHelp"), which permits Platform users to remotely access sensitive information stored on the Platform. *Id.* ¶ 4. Plaintiffs allege that Intelerad failed to securely implement, configure, and monitor SimpleHelp and that this failure introduced a vulnerability across the Platform's network, allowing unauthorized threat actors to access and

---

[1] Papetti voluntarily dismissed his complaint in No. 5:25-cv-634 on April 10, 2026.

extract sensitive, personal information of the user's clients, such as social security numbers, dates of birth, treatment or diagnosis information, and health insurance information. *Id.* ¶ 5.

Plaintiffs allege that one or more bad actors were able to exploit SimpleHelp's vulnerabilities and gain access to files containing sensitive patient information, such as patient names, dates of birth, and medical images. *Id.* ¶¶ 33-34. Plaintiffs allege that, following the breach, Intelerad failed to promptly notify individuals whose sensitive information had been accessed or disclose the nature and extent of the data breach. *Id.* ¶ 6. Plaintiffs further allege that any notice regarding the data breach Intelerad did disseminate to impacted individuals was inadequate. *Id.* Plaintiffs allege that Intelerad's failure to securely implement SimpleHelp allowed unauthorized bad actors to access plaintiffs' and putative class members' sensitive information, leaving them vulnerable to identity theft, financial crimes, and medical fraud, and that the risks plaintiffs face are ongoing. *Id.* ¶ 8.

## DISCUSSION

### I. Legal Standards.

Intelerad has moved to dismiss the second amended complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. R. 12(b)(1). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). A plaintiff facing a subject matter jurisdiction challenge bears the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). When a facial challenge to subject matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke

subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

Rule 8 of the Federal Rules of Civil Procedure "requires only a short and plain statement of the claim showing that the pleader is entitled to relief" which provides "the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the Court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow the Court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The Court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (cleaned up).

Intelerad has also moved to strike the second amended complaint. Federal Rule of Civil Procedure 12(f) allows a court, *sua sponte* or on a motion by the parties, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Finally, Rule 15 states that leave to amend should be freely given when justice requires. Fed. R. Civ. P. 15(a). "It is this Circuit's policy to liberally allow amendment[.]" *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). "[L]eave to amend a pleading should be

denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (internal quotation and citation omitted). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

II. Analysis

A. Defendant's motion to strike

The Court considers first Intelerad's motion to strike plaintiffs' second amended complaint. Plaintiffs concede that the filing of their second amended complaint was procedurally improper, but contend that there was no ill intent, that Intelerad will not be prejudiced by plaintiffs' failure to formally request leave to amend, and further that the second amended complaint was filed in an effort to update and streamline the pleadings of both Liebhold and Papetti. *See* [DE 39] at 2-3.

The Court declines to strike plaintiffs' second amended complaint. Under the liberal amendment standards in Rule 15, this Court would have granted plaintiffs leave to amend the complaint had the motion been filed. Given that Intelerad has identified and responded to the alterations made in the second amended complaint, the Court finds no basis for requiring plaintiffs to formally seek leave to amend under these circumstances, and the motion to strike is denied. The Court will consider the second amended complaint as the operative complaint in this case.

Additionally, it is well settled that a timely filed amended pleading supersedes the original pleading. *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017). As the Court has deemed the second amended complaint as the operative pleading, the first motion to dismiss the amended complaint is denied as moot.

B. Defendant's motion to dismiss under Rule 12(b)(1)

Intelerad seeks to dismiss the second amended complaint for lack of standing. Subject-matter jurisdiction includes Article III standing, *Ctr. for Biological Diversity v. United States Forest Serv.*, 764 F. Supp. 3d 349, 355 (S.D.W. Va. 2025), and "[t]he party attempting to invoke federal jurisdiction bears the burden of establishing standing." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Standing is the determination of whether a particular individual is the proper party to assert a claim in federal court; it "is founded in concern about the proper—and properly *limited*—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (emphasis added). The standing doctrine curtails the types of disputes that an Article III court can resolve by requiring courts to hew to their express constitutional mandate of resolving "cases" and "controversies." *See id.*; U.S. Const. art. III, § 2, cl. 1. The standing question asks "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. An affirmative answer to this question requires plaintiffs to demonstrate at least three "irreducible constitutional minimum" requirements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up, internal citations omitted).

Intelerad argues that plaintiffs' second amended complaint must be dismissed because plaintiffs have failed to allege an actual or imminent injury, that they fail to trace any alleged injury to Intelerad, and finally that plaintiffs lack standing to seek injunctive relief because they have not alleged any future harm that is imminent and not speculative.

Courts in the Fourth Circuit have found that actual misuse of a plaintiff's information, such as "fraudulent and unauthorized" credit card charges, is sufficient injury-in-fact to satisfy Article III standing. *See Farley v. Eye Care Leaders Holdings, LLC*, 2023 WL 1353558, at *4 (M.D.N.C. Jan. 31, 2023). Both plaintiffs allege that their sensitive personal information has been found on the dark web. [DE 34] ¶¶ 49, 150, 168. Liebhold alleges that the same debit card provided to her medical provider and client of Intelerad was utilized in an unauthorized and fraudulent charge of $1,282.93. [DE 34] ¶ 149. Plaintiff Papetti alleges similar unauthorized activity associated with his financial information, resulting in plaintiff Papetti's having to cancel and obtain reissued bank cards. *Id.* ¶ 167. The Court finds these allegations of actual misuse, rather than "'mere compromise of personal information,' . . . bring the actual and threatened harm [alleged by plaintiffs] out of the realm of speculation and into the realm of sufficiently imminent and particularized harm to satisfy the injury-in-fact requirement' for standing." *McCreary v. Filters Fast LLC*, 2021 WL 3044228, at *4 (W.D.N.C. July 19, 2021) (citations omitted).

Intelerad argues next that plaintiffs' second amended complaint must be dismissed because it fails to trace any alleged injury to Intelerad. However, plaintiffs' burden to establish traceability is "relatively modest at this stage of litigation[.]" *Bennett v. Spear*, 520 U.S. 154, 171 (1997). Plaintiffs are not required to "show to a scientific certainty that defendant . . . caused the precise harm suffered." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (en banc).

The Fourth Circuit has held that complaints which allege fraudulent use of personal information that was collected and stored by a defendant "contain 'sufficient factual matter' to render the Plaintiffs' allegations plausible on their face with respect to traceability." *Hutton v. Nat'l Bd. of Exam'rs Optometry, Inc.*, 892 F.3d 613, 6224 (4th Cir. 2018) (citation omitted) (holding that

fraudulent credit cards which were opened using the same data being collected and stored by the defendant is sufficient factual allegation to fulfill the traceability requirement). Plaintiffs' allegations of debit and credit card misuse after their data stored on the Platform appeared on the dark web allow the Court to fairly trace their injuries to Intelerad's failure to properly secure their sensitive information stored on the Platform. Intelerad argues that plaintiffs have failed to provide any reason to believe that their alleged injuries were caused by a data incident impacting the Platform because their injuries may have been caused by some other, unrelated data incident affecting some other company. But, at this stage, the Court must accept as true that it was a data breach involving the Platform that allowed bad actors to access the plaintiffs' names, Social Security numbers, addresses, dates of birth, and other personally identifying information in order to cause, for example, fraudulent credit charges. *See Hutton*, 892 F.3d at 623.

In sum, at this stage, in which plaintiffs' burden is "relatively modest," and the facts alleged are taken as true, the Court finds that plaintiffs' "general allegations embrace those specific facts that are necessary to support" a connection between plaintiffs' alleged injuries and Intelerad's data breach. *Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc., Customer Data Sec. Breach Litig.)*, 870 F.3d 763, 772 (8th Cir. 2017) (citation omitted).

Intelerad finally argues that plaintiffs' request for injunctive relief should be dismissed because they fail to allege any future harm redressable by an injunction against Intelerad. [DE 38] at 11-12. Here, the Court agrees in part.

Plaintiffs seek both retrospective damages and injunctive relief, and they must be able to demonstrate that they have standing to pursue each form of relief they seek. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021). "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk

of harm is sufficiently imminent and substantial." *Id.* at 435. Moreover, Article III's standing requirements "prohibit plaintiffs from receiving redress for speculative future injuries or for injuries incurred only in response to those speculative injuries." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 435 (4th Cir. 2025).

Plaintiffs allege that plaintiffs' and putative class members' sensitive information compromised by the Platform's data breach continues to be an attractive target for unauthorized threat actors, *see, e.g.*, [DE 34] ¶ 127, and they seek to protect themselves from Intelerad's alleged ongoing failure to implement secure data practices, such as proper due diligence of third-party software and adequate security safeguards and mitigating measures. *Id.* ¶ 35. Plaintiffs seek an injunction which would require Intelerad to enhance its security and monitoring systems, be subject to future audits of its security and monitoring systems, and to provide ongoing identity theft and credit monitoring services to the plaintiffs and the putative class. *Id.* ¶¶ 205, 226.

Plaintiffs have failed in part to sufficiently allege standing to pursue injunctive relief against Intelerad, as their allegations regarding any future, ongoing risk of harm do not establish that such harm sufficiently imminent. As recently noted by the court of appeals, "[a] future harm is not imminent just because there is an 'objectively reasonable likelihood' that it will someday come to pass." *Holmes*, 156 F.4th at 429 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). The possibility that these plaintiffs would be victims of another data breach if Intelerad is not forced to implement improved security measures is simply too speculative. *See Holmes*, 156 F.4th at 433. Plaintiffs lack standing to seek injunctive relief which would require Intelerad to enhance its security systems and be subject to audits. However, the provision of credit and identity theft monitoring could be construed as a remedy for the ongoing harm of plaintiffs' alleged past

injuries. *See Jonathan R. by Next Friend Dixon v. Morrisey*, 178 F.4th 139, 163 (4th Cir. 2026). Accordingly, the Court will not dismiss the requested injunctive relief in full.

C. Defendant's motion to dismiss under Rule 12(b)(6)

Intelerad argues that plaintiffs' claims fail because (1) their allegations of a data incident affecting their data are entirely conclusory; (2) the only conduct plausibly alleged is Intelerad's ownership of Ambra Health; and (3) plaintiffs fail to allege one or more elements of each cause of action.

The Court has considered plaintiffs' claims under the applicable standards outlined above and determines that plaintiffs have plausibly alleged their claims for relief at this early stage. Intelerad's motion to dismiss under Rule 12(b)(6) is denied.

## CONCLUSION

For the reasons set forth above, the first motion to dismiss [DE 28] is DENIED AS MOOT, defendant's motion to strike plaintiffs' second amended complaint [DE 35] is DENIED, and defendant's second motion to dismiss [DE 37] is GRANTED IN PART and DENIED IN PART. Plaintiffs' request for injunctive relief is DISMISSED IN PART without prejudice.

SO ORDERED, this 11 day of August 2026.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE